UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

SCOTT D. OWENS,

    Plaintiff,

v.

                                                                                        Case No. 0:17-cv-61924-WPD

ATS PROCESSING SERVICES, LLC,

    Defendant.

_____/

**DEFENDANT ATS PROCESSING SERVICES, LLC'S MOTION TO DISMISS
AMENDED COMPLAINT WITH PREJUDICE AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant ATS Processing Services, LLC (ATS) moves to dismiss Plaintiff Scott D. Owens's Amended Complaint (Doc. # 11) with prejudice[1] because Owens failed to allege facts, as opposed to conclusions and legal argument, establishing the debt at issue was in default at the time ATS obtained it. This pleading failure is fatal to his claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq*.

**I.    Central Allegations Taken as True for the Court's Decision on this Motion Only**

Owens rented a car from The Hertz Corporation while on vacation in Canada between May 16, 2017, and May 22, 2017. (Doc. # 11 at ¶ 11). During his rental period, Owens incurred

---

[1] As it did in its first Motion to Dismiss (Doc. # 10 at n.1), ATS moves to dismiss the Amended Complaint because Owens has not served ATS Processing Services, LLC. *See* Fed. R. Civ. P. 12(b)(5); *Laster v. City of Albany, Ga., Water, Gas & Light Co.*, 517 Fed. App'x 777, 777 (11th Cir. 2013) ("Valid-service of process is a prerequisite for a federal court to assert personal jurisdiction over a defendant." (citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990))). He served non-party American Traffic Solutions, LLC. That ground alone warrants dismissal, albeit without prejudice. In light of the dispositive issues addressed herein, however, dismissal should be with prejudice on the grounds stated in the body of the Motion.

1

two toll charges, one at 3:33 p.m. on May 20, 2017, and the second at 2:02 a.m. on May 21, 2017. (*Id.* at ¶ 12; Doc. # 11-2; Ex. A at 2).[2] Upon "information and belief," Owens alleges that the toll authority sent a bill to Hertz for the tolls incurred by him, with payment due in 30 days. (Doc. # 11 at ¶¶ 13-15). Under the express terms of Owens's rental agreement with Hertz, in the event that Owens incurred any toll charge during his rental which he did not pay for directly at the time, he agreed to be financially responsible to Hertz for prepayment of those tolls, including an administrative fee. (*Id.* at ¶ 22; Doc. # 11-1). Owens alleges that Hertz paid the toll charges he incurred during his rental period on his behalf to the toll authority pursuant to his rental agreement. (Doc. # 11 at ¶ 15). That payment extinguished any "debt" that existed at that time to the toll authority.

Owens further alleges "[u]pon information and belief," that, "apparently unable or unwilling to effect collection of Plaintiff's toll charges as contemplated in Plaintiff's Rental Record, American Traffic Solutions, Inc. forwarded Plaintiff's delinquent toll charges and administrative fees to Defendant." (*Id.* at ¶ 21). But this description of the toll charges and administrative fee as being delinquent is contradicted by Owens's allegations and arguments in the Amended Complaint. As he himself alleges, the Notice from ATS was the sole invoice he received vis-à-vis the debt (*i.e.*, an amount equal to toll charges and an administrative fee) he owed Hertz. (*Id.* at ¶ 23). And, as explained more fully below, even under Owens's definition of "default," the debt owed to Hertz, which is distinct from the debt to the toll authority, could not have been in default when ATS obtained it because payment of that debt was not due until August 30, 2017. (Doc. # 11-2). A debt simply cannot be in default before it becomes due.

---

[2] Although Owens attached the first page of the Notice (Doc. # 11-2), he did not attach the second page. Exhibit A is the complete Notice that was sent to him. Further, this Exhibit A contains potentially sensitive, personal information, *e.g.*, the last four digits of Owens's credit card. In order to ensure privacy, ATS has redacted that information.

2

113412483.5

Owens claims that on August 5, 2017, ATS sent him a Notice of Toll Amount and Administrative Fee for Rental Car Toll Charge. (Doc. # 11 at ¶ 22; Doc. # 11-2). As to this mailing, Owens alleges that ATS "is a corporation that regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted owed or due another, such as Hertz, and is therefore a 'debt collector.'" (Doc. # 11 at ¶¶ 9, 19).

Significantly, though, Owens alleges that this same August 5, 2017 Notice was the "initial," *i.e.*, first, communication with him concerning the toll that he had previously agreed to be charged pursuant to the terms of his rental agreement, for tolls incurred during his rental and the associated administrative fee. (*Id.* at ¶ 23). According to Owens's own allegations, the Notice was not for payment to the toll authority for the original toll triggered when he went through the toll booth because Hertz had already paid those charges on his behalf. *See also* (Doc. # 11-2) (stating that "the toll charge(s) were paid on your behalf to protect Hertz from incurring late fees, penalties and potential vehicle seizure" and that the invoice is to reimburse Hertz Processing Services "for the toll amount we paid you your behalf"). Rather, the charges listed in the Notice were charges he owed to Hertz pursuant to the rental agreement.

Thus, based upon the allegations of the pleading, this action centers on the *one and only* communication with Owens to collect the toll charges and administrative fees that he expressly agreed to pay to Hertz when he rented his vehicle from Hertz in the event Hertz paid the toll charges on his behalf to the toll authority—which he alleges Hertz did. Although Owens's Amended Complaint contains conclusions couched as factual allegations as to the status of the debt (Doc. # 11 at ¶¶ 25-26), the simple fact remains that, as with his first Complaint, there are no well-pled *factual* allegations the debt was in default at the time ATS obtained it.

Nonetheless, even having been put on notice that the facts necessary to support this claim

3

do not exist through ATS's motion to dismiss the Complaint, Owens returns in his Amended Complaint with claims against ATS for alleged violations of the FDCPA. Specifically, Count I alleges ATS violated § 1692e(11), Count II alleges ATS violated § 1692g, and Count III alleges ATS violated § 1692g(b). (*Id.* at 7-10). All three Counts should be dismissed with prejudice as a matter of law.

**II.     Standard for Evaluating Rule 12(b)(6) Motions**

The Court must accept the well-pled allegations stated in the complaint as true, construe those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences from the allegations in favor of the plaintiff. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In addition, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, "[t]he scope of review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "There is an exception, however, to this general rule. In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)

113412483.5

(stating, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

**III.     The Court Should Dismiss the Complaint with Prejudice**

**A.     Applicable FDCPA Provisions and Case Authorities**

The FDCPA defines "debt" as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money . . . or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Notably, there are several exclusions to the term "debt collector." The FDCPA explicitly excludes "any person collecting or attempting to collect *any debt owed or due or asserted to be owed or due another* to the extent such activity . . . concerns a debt *which was not in default at the time it was obtained by such person* . . . ." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Although the FDCPA does not define the term "default," "courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding . . . ." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 87 (2d Cir. 2003). Unsurprisingly, then, default does not occur immediately upon payment becoming due. *Id.* Indeed, the "assertion [that] 'default' and 'outstanding' are synonymous is not a correct statement of the law." *Hamilton v. Acectus Health Care Sols., LLC*, No. 5:13-cv-01967-SGC, 2015 WL 5693610, at *8 (N.D. Ala. Sept. 29, 2015).

5

Because the FDCPA expressly excludes entities that obtain a debt prior to default, "to survive a motion to dismiss, a complaint must allege facts demonstrating that the defendant obtained the debt after the plaintiff was in default." *Prickett*, 946 F. Supp. 2d at 1249 (dismissing FDCPA claim where complaint failed to allege debt was in default at time debt servicer obtained debt). Courts routinely dismiss complaints where there is no allegation that the debt was in default at the time defendant obtained the debt. *See, e.g.*, *Fenello v. Bank of Am., NA*, 577 Fed. App'x 899, 902 (11th Cir. 2014) (affirming dismissal of FDCPA claim because complaint failed to establish debt was in default at the time it was obtained by defendant); *Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055-BLOOM/Valle, 2017 WL 3732097, at *8 (S.D. Fla. Aug. 30, 2017) (stating, "because Plaintiff has failed to allege that his [debt] was in default at the time it was assigned to Defendant, Defendant does not qualify as a debt collector under the FDCPA" and dismissing FDCPA claim with prejudice); *Delisfort v. U.S. Bank Tr., N.A.*, No. 16-60730-Civ-Scola, 2017 WL 1337620, at *2 (S.D. Fla. Feb. 7, 2017) (stating that failure to allege the debt was in default when it was obtained by defendant was "fatal to [plaintiffs'] claims" (citing *Bush v. J.P. Morgan Chase Bank*, No. 15-00769, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016) (dismissing FDCPA claim because complaint had no factual allegations supporting conclusion that debt was in default when defendant began servicing debt))); *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 801-02 (S.D.N.Y. 2011) ("[T]he [complaint] does not allege that the loans of the named plaintiffs were in default at the time Chase 'obtained' those loans. As a result, Chase is excluded from the definition of 'debt collector' under the statute.").

ATS requests that the Court follow these decisions here.

**B.  This Case Should Be Dismissed with Prejudice Because the Debt Was Not in Default**

In the original Complaint, Owens focused his claims on the singular invoice ATS sent to

6

him for the toll charges and administrative fees that he owed to Hertz, which were incurred pursuant to his rental agreement with Hertz. ATS moved to dismiss with prejudice on the grounds that Owens had not and could not allege that the debt at issue was in default when ATS obtained it.

In the Amended Complaint, Owens attempts to overcome his pleading deficiency by alleging that the debt ATS was trying to collect was in default because a default happened the minute he went through the toll booth and triggered the charges, or, alternatively, because the original tolls and charges issued by the tolling authority had to be paid within 30 days. Owens alleges that because the invoice that ATS sent to him was mailed after that 30-day period to pay the toll authority, the debt was in default. Owens is wrong as a matter of law.

As to the original sums owed to the toll authority, Owens alleges that after he incurred two toll charges, the toll authority sent a bill to Hertz requesting payment within 30 days. (Doc. # 22 at ¶¶ 12-14). Owens alleges that Hertz paid the requested amount. (*Id.* at ¶ 15). Under Owens's own allegations then, the debt owed to the toll authority was due, not at the time he passed through the tolls, but rather, within the 30 days marked on the invoice allegedly sent to Hertz. Hertz "paid the requested amount within the aforesaid thirty (30) day time frame." (*Id.* at ¶ 15). Thus, the debt owed to the toll authority was never in default. In fact, that debt was extinguished by Hertz when it fulfilled the obligation to timely pay the charges incurred by Owens driving its vehicle through the toll. Accordingly, the original sums due to the tolling authority cannot form the basis of this action because they (1) were paid by Hertz when, or within 30 days of when, its vehicle passed through the toll booth and (2) were never in default.

Owens attempts to avoid all of this by arguing "the debt at issue was . . . [n]ot *timely* paid within the meaning of that term, as defined in [the Rental Record]," (Doc. # 11 at ¶ 26), because

7

the TReO, which administers tolls on behalf of the Port Mann Bridge, requires payment within 30 days from the date of the mailed invoice. (*Id.* at ¶ 13, n.4). His argument is flawed for two reasons.

First, it conflates the debt due to the toll authority, which, per his own allegations, was paid by Hertz, with the debt due to Hertz by operation of his rental agreement with Hertz. Second, the argument is refuted by the Notice itself. The Notice states, in part: "**Important Notice If You Timely Paid the Toll Charge(s):** If you have already remitted payment to the toll issuer, please provide us with proof of payment so we may clear this matter with the toll issuer." (Doc. # 11-2) (bolding and underlining in original). By its plain language, this notice tells a renter that, if he/she paid the toll authority directly (*e.g.*, with cash) but was mistakenly also charged through a transponder or by plate, the renter need only prove prior payment to the toll authority to avoid the contractual obligation imposed by the rental agreement from arising. Owens cannot solve this conundrum, because he has not, and cannot, allege that ATS was attempting to collect a debt *due to the toll authority*.

In short, Owens's allegations prove there can be no liability based on the debt due from Hertz to the toll authority. Once this initial debt is removed from the analysis, Owens is left with the sum for which ATS billed him on behalf of Hertz pursuant to his rental agreement. But that leaves Owens in exactly the same position he faced with the original Complaint and motion to dismiss—the debt due to Hertz pursuant to the rental agreement was not in default at the time ATS obtained it.

Owens's rental agreement with Hertz explicitly provides that the renter (*i.e.*, Owens) would "be charged for any toll . . . violation charges/fines/penalties incurred plus administrative fees." (Doc. # 11-1). The same agreement goes on to state, "you will be charged $ 14.00 per

8

rental, plus the incurred tolls and any taxes, about 1 month after your rental closes." (*Id.*). Thus, the Rental Record expressly contemplated that the charges Owens was invoiced would not even be issued for approximately one month after the rental relationship ended (with no connection to the timing of when the toll was incurred). There is therefore no factual basis for Owens to claim that the sums he owed to Hertz were due at the time he went through the toll booth.

Indeed, as Owens alleged (Doc. # 11 at ¶¶ 22, 23) and as shown by the Notice (Doc. # 11-2; Ex. A), Owens was invoiced once for the debt he owed to Hertz, to reimburse it for the tolls he incurred and to cover an administrative fee. Furthermore, the Notice requested payment within 25 days of receipt. (Doc. # 11-2). Although Owens argues that the Notice was sent after the approximated one-month timeframe noted in the Rental Record, the tardiness of the initial bill is inconsequential. Even if ATS sent the first and only bill later than the estimate, the fact remains, as explained below, a debt cannot be in default before it is even due. And on that point, there are no facts alleged to show the debt Owens owed to Hertz was in default.

Owens's pleading deficiency is unsurprising given that the face of the August 5, 2017 Notice demonstrates the debt was not in default at the time ATS obtained it and billed him for it. The Notice shows the due date as August 30, 2017, which was a full 25 days ***after*** ATS sent the Notice. Owens attempts to avoid these facts through bald legal conclusions and argument over the meaning of "default." The Court should reject them as a matter of law.

*Black*'s defines "default" as "the failure to pay a debt when due." (Doc. # 11 at ¶ 25) (original emphasis and citation omitted). Under that definition, a debtor must (a) be given the opportunity to pay and (b) fail to pay on the date due, before the debt can be in default. As such, Owens (a) had to receive an invoice for the amounts he owed Hertz and (b) fail to pay on or before the stated due date, before the debt could be in default. Owens's allegations demonstrate

9

that the Notice sent by ATS was the initial invoice stating the amount owed and defining the payment period. While Owens argues that the debt "became due at the time he passed through the toll booths," (Doc. # 11 at ¶ 25), the Notice clearly states that the "Due Date" was August 30, 2017 – 25 days *after* it was sent. (Doc. # 11-2). Even by *Black's* definition, the debt for which ATS billed Owens could not have been in default before it was forwarded to ATS, because it was not yet due. That conclusion is consistent with *Hamilton*'s observation that the "assertion [that] 'default' and 'outstanding' are synonymous is not a correct statement of the law." 2015 WL 5693610, at *8; *see also*, *Alibrandi*, 333 F.3d at 87 (noting that courts "have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding").

The debt owed to Hertz was not due until August 30, 2017, as reflected by the first—and only—invoice sent to Owens. As such, as a matter of law, the debt to Hertz could not have been in default before August 30, 2017, and it was not in default when ATS obtained the debt Owens had already agreed to pay Hertz.

At bottom, there are no factual allegations that the debt to Hertz was in default before ATS obtained it. Quite the contrary, Owens's allegations support the conclusion that ATS obtained the debt owed to Hertz well before the debt became due on August 30, 2017, per the first and only bill sent to Owens. Because the debt was not in default at the time it was obtained, ATS is statutorily excluded from the definition of a debt collector. *See* 15 U.S.C. § 1692a(6)(F)(iii). The Court should therefore dismiss the Amended Complaint with prejudice.

## Conclusion

Defendant ATS respectfully requests that the Court dismiss the Amended Complaint with prejudice and reserve jurisdiction to consider an award of reasonable attorney's fees and costs to ATS pursuant to 15 U.S.C. § 1692k(a)(3) together with an award of all further appropriate relief.

Dated: December 5, 2017.

Respectfully submitted,

**CARLTON FIELDS JORDEN BURT, P.A.**

/s/  Kevin P. McCoy
Kevin P. McCoy
Florida Bar No. 0036225
kmccoy@carltonfields.com
Fentrice D. Driskell
Florida Bar No. 0833851
fdriskell@carltonfields.com
Carlton Fields Jorden Burt, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, FL  33607
Tel: (813) 223-7000
Fax: (813) 229-4133
*Attorneys for Defendant ATS Processing Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on December 5, 2017, on all counsel or parties of record on the Service List below.

/s/ Kevin P. McCoy
Kevin P. McCoy

**SERVICE LIST**

Scott D. Owens, Esq.
Scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
Attorney for Plaintiff *Scott D. Owens*

11

113412483.5